

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00085-CR

_____

JARED SCHUREN, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 427th District Court
Travis County, Texas
Trial Court No. D-1-DC-17-900004

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

A Travis County jury[1] convicted Jared Schuren of theft of property with an aggregated value of $20,000.00 or more, but less than $100,000.00, a third-degree felony.[2] In Texas, "the State is under no obligation to plead more specific offenses [encompassed within the theft statute], but . . . if the State unnecessarily chooses between statutory alternatives, it must prove what it plead." *Geick v. State*, 349 S.W.3d 542, 547 (Tex. Crim. App. 2011) (citing *Cada v. State*, 334 S.W.3d 766, 776 (Tex. Crim. App. 2011)). If the State fails to prove the specific manner and means it alleged, the evidence is legally insufficient to support the defendant's conviction. *Id*. at 548.

In this case, the State alleged that Schuren committed the offense of theft by deception. Although the State may have proved theft, it did not prove that the victims consented to Schuren's misappropriation of their property by relying on his deceptive acts. Therefore, the State failed to prove that Schuren committed theft *by deception* as alleged in the indictment. *Demond v. State*, 452 S.W.3d 435, 445 (Tex. App.—Austin 2014, pet. ref'd) (citing *Daugherty v. State*, 387 S.W.3d 654, 659 n.18 (Tex. Crim. App. 2013)). Because the State failed to prove the specific manner and means it alleged in the indictment, the evidence is legally insufficient to sustain Schuren's conviction. *Geick*, 349 S.W.3d at 547; *Demond*, 452 S.W.3d at 462. Consequently, we reverse the trial court's judgment of conviction and render a judgment of acquittal.

---

[1]Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. See TEX. GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedent of the Third Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

[2]*See* Act of May 9, 2011, 82d Leg., R.S., ch. 120, § 1, 2011 Tex. Gen. Laws 608, 608 (amended 2017) (current version at TEX. PENAL CODE § 31.03 (West Supp. 2018)); TEX. PENAL CODE ANN. § 31.09 (West 2016).

## I. Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Demond v. State*, 452 S.W.3d 435, 445 (Tex. App.—Austin 2014, pet. ref'd).

Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

Here, the State alleged that Schuren,

> pursuant to one scheme or continuing course of conduct, . . . unlawfully appropriate[d], by acquiring or otherwise exercising control over property, to wit: United States currency, from Diana Kink, Parkenzie Services, Pam Bernhardt, and/or Bernhardt Properties I, LTD, the owner thereof, without the effective

3

consent of the owner, namely, by deception, with intent to deprive said owner of said property, and the aggregate value of the property obtained was $20,000 or more but less than $100,000.[3]

By including language alleging that the offense occurred by deception, the State chose one of several manner and means of committing theft. "When a statute lays out several alternative methods of committing the offense, and the indictment alleges only one of those methods, 'the law as authorized by the indictment' is limited to the method specified in the indictment." *Geick*, 349 S.W.3d at 545 (citing *Gollihar v. State*, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001)).

Accordingly, to establish theft as alleged under the hypothetically correct jury charge, the State was required to prove that Schuren (1) unlawfully appropriated by deception (2) property valued at $20,000.00 or more, but less than $100,000.00, (3) from Kink, Bernhardt, Parkenzie Services, and/or Bernhardt Properties I, LTD (collectively referred to as the Owners), (4) with the intent to deprive them of their property. *See* TEX. PENAL CODE ANN. § 31.03(a). On appeal, Schuren challenges only the first requirement.

As to that requirement, "[a]ppropriation of property is unlawful if . . . it is without the owner's effective consent." TEX. PENAL CODE ANN. § 31.03(b)(1). "Consent is not effective if . . . induced by deception or coercion." TEX. PENAL CODE ANN. § 31.01(3)(A) (West Supp. 2018). Because the indictment alleged that the Owners' consent was ineffective since it was induced by deception, we agree that the State was required to show that the Owners "'actually relied upon the defendant's deceptive acts' when giving [their] consent." *Demond*, 452 S.W.3d at 445 (quoting

---

[3]"When amounts are obtained in violation of this chapter pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense." TEX. PENAL CODE ANN. § 31.09.

*Daugherty*, 387 S.W.3d at 659 n.18; *see Geick*, 349 S.W.3d at 547–48 ("concluding that when indictment alleges theft by deception, State is limited to that theory of effective consent")); *see Bozeman v. State*, 353 S.W.3d 886, 886–87 (Tex. Crim. App. 2011) (per curiam). Schuren argues that the evidence at trial fell short of establishing "that appellant's words or actions ever resulted in obtaining the consent of [the O]wners, . . . effective or otherwise."

## II.    The Evidence at Trial

The evidence at trial established that the State's theft charge arose from Schuren's activities as a property manager for the Owners. Bernhardt, a real estate agent and half-partner in Bernhardt Properties I, LTD, testified that the partnership owned and held short-term vacation rental properties, including a home located at 3508 Kahala Sunset Drive, marketed as the Waterstone Lodge.[4] Similarly, Bernhardt's close friend and fellow realtor, Kink, testified that she was a co-owner of Parkenzie Services, LLC, which owned a home located at 3400 Kahala Sunset Drive, marketed as the Kahala Sunset Lodge.[5]

Bernhardt and Kink listed their lodges on HomeAway, a short-term rental website where customers could browse through desired available properties, view the listed rental price, and submit rental requests to property managers or owners. In 2012, Bernhardt hired Schuren, a good friend and fellow realtor, to manage the Waterstone Lodge as an independent contractor. Schuren's duties included answering customer inquiries, receiving and accepting Waterstone

---

[4]Bernhardt described the Waterstone Lodge, which was between 4,700 and 5,000 square feet, as a "five-bedroom, five-and-a half bath home" sleeping fourteen people. It rented for $1,250.00 per night, but had a discounted weekly rate of "six nights instead of seven."

[5]The Kahala Sunset Lodge was a four-bedroom home sleeping fourteen that rented for between $900.00 and $1,500.00 per night.

Lodge rental requests, facilitating the execution of property rental contracts, meeting customers as they checked-in, and managing the cleaning crew after customers left the lodge. In exchange for his services, Schuren received a twenty percent commission from the rental fees. After Bernhardt introduced Kink to Schuren, Kink also decided to hire him to manage the Kahala Sunset Lodge.

Bernhardt and Kink testified that Schuren was never authorized to personally accept deposits or rental fees from customers. Pursuant to the rental agreements, all sums were to be paid only by check made out directly and mailed either to Bernhardt Properties or Parkenzie Services. Emails between Bernhardt and Schuren established that Bernhardt Properties' bookkeeper and accountant, Joslyn Mogonye, was to continue collecting any money resulting from Waterstone Lodge rentals and paying the cleaning crew. Likewise, Kink explained that Parkenzie Services' accountant, Dava Willis, was to collect all deposits and rental fees for the Kahala Sunset Lodge.

Bernhardt and Kink testified that they were initially satisfied with Schuren's performance. Approximately one year later, Schuren asked Bernhardt and Kink if he could move their lodge listings under his own HomeAway management account so that he could list the lodges with other homes he was managing. Bernhardt and Kink agreed. Yet, they became concerned when searches of their lodges under Schuren's HomeAway account reflected that no bookings had been made during the Spring high season. When Bernhardt confronted Schuren about the blank calendar, Schuren simply stated that houses "rented better when there were no dates marked."

As she was driving past the Waterstone Lodge in late Spring, Bernhardt saw that it was occupied even though the HomeAway website listed it as available. When questioned, Schuren told Bernhardt that the lodge was rented "last minute," he had the rental fee, and he was going to

take it to Mogonye.  Schuren then sent a check he had personally made out for the rental fees and also paid the cleaning crew from his own bank account.  Although the check indicated that a man named John Marks had rented the Waterstone Lodge, Bernhardt Properties never received a rental agreement executed by Marks.  Then, when Bernhardt Properties received a complaint through HomeAway from Jenny Daughtry after her security deposit, which was accepted by Schuren via PayPal, was not returned, Bernhardt's suspicions turned to Schuren.  Bernhardt notified Kink of a potential problem and called Schuren, who immediately said he would return Daughtry's money.

Bernhardt and Kink worked with HomeAway to conduct their own investigation by emailing anyone who had left rental inquiries on the website.  Several customers responded by notifying Bernhardt and Kink that they had occupied the properties during a time when the HomeAway website listed them as available.  According to Bernhardt and Kink, these customers informed them that they had paid Schuren directly through PayPal and produced agreements with headers altered from "Bernhardt Properties" or "Parkenzie Services" to Schuren's company, "Elite Living."  Some of those customers testified that they had complied with Schuren's requests to mail the rental contracts to his address.  Bernhardt and Kink both determined that Schuren had collected deposits and rental fees without ever informing them that their properties had been rented.

According to Mogonye, Schuren had failed to inform Bernhardt Properties of thirteen rentals and did not remit any payments made by those customers.  Kink and Willis offered similar testimony.  A few of the hidden customers, including Jennifer Hess Patthof, Yvetta Murphy, Jennifer Daughtry, Demetra Elston, and Donna Vernon, testified that they had rented either the Waterstone Lodge or Kahala Sunset Lodge from Schuren, doing business as Elite Living, and had

7

paid their rental fees via PayPal to Schuren's PayPal account. David Carroll, a sergeant with the Travis County Sheriff's Office, testified that his investigation revealed that Schuren had taken $43,117.15 from Bernhardt Properties and $41,539.40 from Parkenzie Services.

### III. The Evidence Is Legally Insufficient to Prove the Manner and Means Alleged

The State had to prove "that the owner of the misappropriated property was induced to consent to its transfer because of a deceptive act of the defendant." *Fernandez v. State*, 479 S.W.3d 835, 838 (Tex. Crim. App. 2016). This required an act of deception by Schuren and an act of reliance on the deception by the owners.

Deception is defined as, among other things, "(1) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true or (2) preventing another from acquiring information likely to affect his judgment in the transaction." *Demond*, 452 S.W.3d at 454 (citing TEX. PENAL CODE ANN. § 31.01(1)(A), (C)). It can also mean

> promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed.

TEX. PENAL CODE ANN. § 31.01(1)(E) (West Supp. 2018). Here, Schuren created the false impression that he was properly managing the properties in accordance with his arrangements with the Owners. He withheld the existence of many rentals from the Owners, represented on HomeAway that the properties were available when they were occupied, placed his own company name at the head of the Owners' rental contracts, and accepted and secreted payments from

8

customers into his own PayPal account. We find that the State presented ample evidence of deceptive acts committed by Schuren, but that does not end our inquiry.

"To constitute theft by deception, the victim's consent to the defendant's control over the property is ineffective because the consent was 'induced by deception,' meaning that the victim relied on the defendant's deceptive act when giving his consent." *Demond*, 452 S.W.3d at 453 (citing TEX. PENAL CODE ANN. § 31.01(3)(A); *Daugherty*, 387 S.W.3d at 659 n.18). "The reliance need not be the sole, or even controlling, reason why the victim decided to provide [his consent], but it must be a substantial or material factor in the decision-making process." *Id.* (quoting *Daugherty*, 387 S.W.3d at 659 n.18) (citations omitted)).

Here, the State argues that consent was shown when Bernhardt and Kink both agreed to allow Schuren to list their properties under his HomeAway account. Yet, the properties themselves were not misappropriated; rather, the rentals from those properties were. Thus, although Schuren was authorized to list the properties under his HomeAway account, Bernhardt and Kink testified that Schuren was never authorized to handle money from customers. Consequently, the evidence established that Schuren never obtained consent from the Owners, effective or otherwise, to appropriate their money,[6] and the evidence is therefore legally insufficient to show consent induced by deception. We sustain Schuren's sole point of error.

---

[6]Alternatively, the State also argues that Schuren was an agent of the Owners and himself provided the requisite consent as their agent. The record demonstrated that Schuren was an independent contractor, not an employee.

9

## IV. Conclusion

Having concluded that the evidence is insufficient to support Schuren's conviction for theft by deception, we reverse the trial court's judgment and render a judgment of acquittal. *See Geick*, 349 S.W.3d at 548; *Demond*, 452 S.W.3d at 462; *see also Graves v. State*, 452 S.W.3d 907, 922 (Tex. App.—Texarkana 2014, pet. ref'd).[7]

Ralph K. Burgess
Justice

Date Submitted:     February 26, 2019
Date Decided:       March 28, 2019

Do Not Publish

---

[7]*See also Sharp v. State*, No. 12-17-00350-CR, 2018 WL 4292243, at *2 (Tex. App.—Tyler Sept. 10, 2018, no pet.) (mem. op., not designated for publication); *Bozeman v. State*, No. 06-10-00055-CR, 2012 WL 112532, at *5–6 (Tex. App.—Texarkana Jan. 12, 2012, no pet.) (mem. op., not designated for publication). Although these unpublished cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).